## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Latasha Monique Boyd,**
                        **Plaintiff,**

**Civil Action No. 1:25-cv-01132**
**Amended**

v.

**United States,**

**Spartanburg Sheriff Department** Chuck Wright Deputy Ezzlarb, Michael S. Petrie, J. Walter, K. Renneker.

**South Carolina Department of Social Services:** Emma E Belcher, Erick M. Barbare, Robert C. Rhoden III, Julia Ramsey, Mathew Hecker, Dana Lyles, Yvette McClinton, Debbie Evans, Shawn Campbell, Melinda Lynn, KeyArial Mcduffie, Kadaijah Martin, Shannon Robinson, Janet B Arthur, April Collins, Andrea Liddel, Kimberly Gist, Tiwana Wright, Satorri Rogers; Brittany Kelly, Jamia Foster, Johnathan Drew Hammond, Wendy Griffith, Keith King.

**Duncan Police Department:** Gregg A. Satterfield, Ward, Paul R. Bethany Phillips, Benjamin Wilson, Michelle Willingham, Ben E. Cox, Cheryl T. MacMillan, Emily H. Walker

**Woodruff Police department:** Jeremy R. Beauvier,

Spartanburg Police Department, Renneker, K. Mullinax Bobby, John Berry, Bogan, J

**Spartanburg County:** Amy W. Cox, Megan Lynn Helton,

Wellford Police Department:

**The State of South Carolina:** Issa B Dickson, Mark Hammond, Mark J. Hayes II, Mindy w. Zimmerman, Todd M. Thigpen, Usha J. Bridges, Angela J Moss, Debra A Mattew, Vickie Rae Smith, Jacqueline Alicia Moss; Stephanie P. McDonald, Letitia H. Verdin, George C. James, Jr., John Connon Few, John W. Kittredge, D. Garrison Hill.

**Spartanburg County Health Department:**

**Spartanburg Regional Health Care System:** Dr. Harold Jones Fuller Jr., Dr. Christopher Steven Vega, Dorna L. Hussey, Amber Bradley, Misty M. Steadman, Cynthia McCurry;

**Spartanburg Social Security Administrative:** additional unnamed officials and agents, Derrick S. Wilkey Sr.

**Defendants.**

### COMPLAINT FOR FEDERAL AND CONSTITUTIONAL VIOLATIONS, DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES

COMES NOW the Plaintiff, Latasha Monique Boyd, appearing sui juris, and files this Complaint before the United States District Court for the District of Columbia, and respectfully alleges and states as follows:

### JURISDICTION AND VENUE

RECEIVED
Mail Room

APR 28 2025

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights violations), 18 U.S.C. § 1964 (civil RICO), and 31 U.S.C. § 3730 (False Claims Act), as this action arises under the Constitution and laws of the United States.

2. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because the United States and federal administrative agencies are involved in the underlying administrative harm and financial misuse of federal funds and credits, and because the Plaintiff seeks national relief for systemic violations involving multiple state and federal actors.

## PARTIES

3. Plaintiff Latasha Monique Boyd is a private American citizen residing in South Carolina. She appears sui juris and asserts her rights under the Constitution and federal law.

4. Defendants include officers and judicial actors operating under color of state law in South Carolina, who have acted individually and in concert to violate Plaintiff's civil rights, obstruct justice, defame her character, deprive her of parental rights, and misappropriate federally-linked benefits and credit instruments for unlawful gain.

## FACTUAL ALLEGATIONS

PETITIONER asserts that the Justices of the South Carolina Supreme Court and the court of appeals, acting under color of law, violated their oaths of office by engaging in administrative and procedural misconduct outside the protected scope of judicial immunity. These actions include but are not limited to: Willful refusal to review or intervene in constitutional violations despite lawful filings presented for redress; Participating in, or failing to check, a known pattern of lower court abuse, systemic deprivation, and unlawful denial of due process rights to PETITIONER; Acting in furtherance of a judicially protected scheme that sustained unlawful state custody removals, funding fraud, and concealment of public torts; Administrative obstruction, docket manipulation, and breach of fiduciary duty to uphold constitutional law.

## NOTE ON JUDICIAL IMMUNITY

2

PETITIONER acknowledges that judicial officers are generally afforded immunity for actions taken within their judicial capacity. However, PETITIONER asserts that certain conduct at issue herein involves acts performed outside the scope of judicial function and without lawful jurisdiction, including conspiratorial, administrative, or retaliatory actions executed in coordination with non-judicial actors. Therefore, PETITIONER reserves the right to seek both declaratory and monetary relief against such judicial actors where the protections of judicial immunity do not apply under law, including but not limited to claims arising under 42 U.S.C. § 1983, 18 U.S.C. §§ 241 and 1962 (RICO), and where applicable, violations of the Foreign Corrupt Practices Act (FCPA), due to unlawful influence, improper benefit exchanges, or abuse of power tied to foreign or federal funds. Bivens v. Six Unknown Agents**, 403 U.S. 388 (1971) – for direct federal constitutional violations; The Foreign Corrupt Practices Act (FCPA)** – to the extent federal or international benefits, grants, or bond revenue were involved in unjust enrichment schemes tied to unlawful judicial actions; And breach of **Article VI, Clause 3** of the U.S. Constitution — Oath of Office.

PETITIONER reserves the right to seek declaratory relief, disciplinary referral, and administrative disqualification from the bench for those judicial actors proven to have participated in systemic injury outside lawful jurisdiction.

1. Spartanburg County, through its law enforcement agencies and affiliated government personnel, has actively contributed to a prolonged campaign of hardship, intimidation, and deprivation against PETITIONER. These officials have engaged in repeated acts of harassment, false arrest, denial of protection, and targeted surveillance—including relentless and unjustified traffic stops—with the intent to destabilize PETITIONER'S life and coerce HER into dependence on state mechanisms.

2. As PETITIONER achieved adulthood and sought independence, the harassment intensified. Law enforcement and the Department of Motor Vehicles (DMV) employed retaliatory tactics including unjust ticketing schemes, administrative obstruction of financial processes, and systemic fraud—all designed to trap PETITIONER in a condition of economic hardship and total state dependence.

3. Since childhood, PETITIONER has been a target of the South Carolina Department of Social Services (DSS), acting under color of law as a coordinated criminal enterprise. From early educational interference to orchestrated traumatic events, PETITIONER'S development was sabotaged. This includes being subpoenaed to a murder trial at the age of 16 and being shot at shortly thereafter. These were not isolated acts but part of a consistent hostile environment designed to induce psychological collapse. DSS and affiliated state actors staged numerous destabilizing incidents amounting to psychological warfare—creating conditions where PETITIONER could never find peace of mind, with the apparent aim of leading HER toward hopelessness and suicidal despair after years of sustained abuse.

4. PETITIONER suffered incalculable emotional and familial loss, including the death of HER grandmother on Valentine's Day and the shooting of HER child's father. DSS then instructed the father not to provide for their daughter, compounding the deprivation.

5. **Unlawful Detention and Coercion (September 17, 2018):** The Petitioner was forcibly transported to Spartanburg Medical Center Emergency Center by Spartanburg Regional paramedics, following a call made by the Petitioner to report concerns. This action, coordinated by the Spartanburg County Sheriff's Department, resulted in her unlawful detention at the Spartanburg Behavioral Center. Coercive and invasive actions followed: **Dr. Christopher Steven Vega, MD:** Allegedly authorized or facilitated the detention under false pretenses. **Donna L. Hussey:** Coerced the Petitioner into disrobing in her presence, violating her privacy rights and bodily autonomy. **Amber Bradley, RN:** Threatened the Petitioner with indefinite detention unless she complied with taking medication against her will.

6. **Fabricated Medical Records and Misdiagnosis: Dr. Harold Jones Fuller Jr.:** Submitted fabricated medical records that falsely diagnosed the Petitioner with an "onset psychotic disorder," without conducting a valid diagnostic evaluation. These records further perpetuated systemic abuses and exacerbated the Petitioner's trauma.

7. **Threats and Retaliation: Misty M. Steadman:** Threatened to involve DSS to remove the Petitioner's child unless the Petitioner contacted her mother to relinquish custody. These baseless threats served as a form of intimidation and manipulation without lawful justification.

4

8. **Improper Medical Billing:** Medical providers at Spartanburg Medical Center issued fraudulent bills for coerced treatments and fabricated diagnoses, further compounding the Petitioner's financial strain. These actions potentially constitute violations of federal healthcare fraud statutes.

## FINANCIAL EXPLOITATION

9. **Excessive Lunch Fees:** The Spartanburg County School District burdened the Petitioner with unpaid lunch fees for her children, ranging from $566.55 to $600. These excessive fees created undue financial hardship and added barriers to her children's educational progress, as the district required payment before issuing diplomas.

10. **Systemic Neglect:** These fees accumulated due to the district's failure to provide adequate notice or manage the school lunch program appropriately, despite the Petitioner's documented economic hardship.

11. **Eligibility for Federal Assistance:** The Petitioner believes her children were eligible for free or reduced-cost lunches under federal programs like the National School Lunch Program, yet the district failed to apply or notify her of these benefits. This oversight highlights systemic neglect and resource mismanagement.

Systemic Failures in Federal Aid and Its Impact on the Petitioner

12. **Mismanagement of Federal Aid:** The Petitioner asserts that Spartanburg County School District may have received federal funds under programs intended to subsidize student meals. However, the district's failure to allocate or manage these resources effectively raises concerns of violations under the False Claims Act (31 U.S.C. § 3729). Mismanagement disproportionately burdened economically disadvantaged families, including the Petitioner's.

13. **Financial Harm:** Mismanagement of these funds directly impacted the Petitioner, as she was held responsible for unpaid school lunch fees, despite systemic failures to apply federal subsidies. The financial burden, coupled with improper billing practices, exacerbated the economic challenges faced by the Petitioner and her children.

Systemic Impact on Employment, Mental Health, and Financial Stability

14. **Employment Barriers and Blacklisting** Despite actively seeking employment, the Petitioner experienced repeated rejections, leading her to believe she was subject to blacklisting. This systemic targeting severely restricted her ability to secure a stable income, perpetuating financial hardship and dependence.

15. **Chronic Stress and Safety Concerns** The Petitioner's inability to secure employment compounded chronic stress and heightened her fear for personal safety. These factors worsened the emotional and psychological toll of systemic harassment, further destabilizing her ability to regain autonomy.

16. **Mental Health Challenges** Prolonged harassment, financial instability, and threats to the Petitioner's safety resulted in her diagnosis with Chronic Anxiety Disorder and Complex PTSD. These conditions also reflect symptoms of Post-Traumatic Slave Syndrome, rooted in historical and systemic oppression.

17. **Application for Social Security Disability Benefits:** In 2018, the Petitioner sought financial relief through Social Security Disability benefits. This application was prompted by the significant financial and emotional strain caused by systemic misconduct and institutional failures.

18. **Evaluation by Dr. Caleb Loring:** The Social Security Administration referred the Petitioner to Dr. Caleb Loring for evaluation. During this assessment, the Petitioner disclosed traumatic life events, including witnessing the murder of her grandmother on Valentine's Day. The evaluation emphasized recounting these traumatic events rather than providing a comprehensive assessment of the Petitioner's mental health, further compounding her distress.

19. The destabilization of PETITIONER'S life has included psychological warfare, unlawful seizures, and systemic exploitation intended to force HER compliance with a political and economic agenda. These actors weaponized HER personal relationships, using HER abuser to label HER mentally ill after SHE left him—thereby justifying state interference. DSS and collaborators have exploited PETITIONER and HER children for commercial gain, without regard for procedural or statutory protections, including removing HER children without a warrant and coercing HER into unlawful contracts under duress.

6

20. In 2018, Derrick Wilkey, weaponize DSS to retaliate against PETITIONER by fabricating claims portraying HER as mentally unfit, which triggered unwarranted DSS removals and prolonged legal warfare and false arrest at my child school without lawful investigation or just cause, without the correct procedural out of retaliatory motive

21. DSS wrongfully removed PETITIONER'S children, unlawfully withheld their disability benefits, removed PETITIONER'S mother as payee without notice or due process, and repeatedly obstructed rightful financial support. These coordinated actions created a state of manufactured deprivation, deliberately undermining PETITIONER'S ability to maintain independence.

22. DSS, operating beyond isolated error, engaged in systemic violations of due process protections enshrined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). These violations include the deprivation of PETITIONER'S liberty and the unlawful seizure of familial rights. DSS's misconduct was financially incentivized, executed under the guise of child welfare, and intended to portray PETITIONER as a dependent ward of the state.

23. South Carolina's family court-aligned industries profit through procedural manipulation and the systemic removal of children. DSS, together with law enforcement and judicial actors, has weaponized public authority for institutional gain, perpetuating cycles of trauma, financial exploitation, and human suffering.

24. PETITIONER has been entrapped in a cycle of engineered dependency. Through fabricated allegations, retaliatory enforcement, and systemic harassment, DSS and its agents orchestrated the removal of PETITIONER'S autonomy. The agencies involved delayed Social Security disability payments, intentionally withheld funds designated for PETITIONER'S daughter, and colluded with the Social Security Administration to interfere with benefit processing, violating constitutional and statutory protections.

25. These officials have engaged in repeated acts of harassment, false arrest, denial of protection, and targeted surveillance including relentless traffic stops, with the intent to destabilize PETITIONER'S life and coerce HER into dependency upon state mechanisms. PETITIONER was further subjected to forced labor conditions while pregnant, compelled to work every day of the week with no regard for HER medical state, and falsely arrested shortly after giving birth to HER child based on fabricated claims by Derrick Wilkey. This

pattern of abuse was compounded by emotional manipulation and state-enabled psychological pressure, forcing PETITIONER to remain bonded to an abusive and controlling individual used as a tool of state coercion. PETITIONER was further blacklisted from meaningful employment and business opportunities, and through persistent deprivation and retaliatory targeting, was coerced into applying for and accepting Social Security disability benefits. The County's actions directly facilitated the objectives of DSS by manufacturing artificial conditions to portray PETITIONER as a dependent for state reimbursement while breaching public trust. This coordinated conduct demonstrates the use of local governmental authority to aid in DSS's larger conspiracy to sever familial bonds, misappropriate federal resources, and deny PETITIONER HER rights under federal law and the U.S. Constitution.

5. Since 2018, Plaintiff has sought lawful redress and justice in various legal matters arising from false allegations, unlawful arrest, retaliatory prosecution, nonstop harassment, and defamation, and family court proceedings tainted by fraud and systemic bias.

6. The South Carolina Department of Social Services (DSS), working with law enforcement and judicial officers, has continuously targeted Plaintiff and attacked her life from childhood to the present day, relied on false allegations from Plaintiff's known abusers to justify the unlawful removal of her children. DSS acted without lawful authority, deprived Plaintiff of due process, caused entrapment, and violated multiple federal protections. These systemic abuses have culminated in the exhaustion of state remedies and justify federal intervention.

7. DSS and associated officials failed to provide discovery, denied Plaintiff her right to be heard, and proceeded without proving jurisdiction on the record during the merits hearing.

8. State officials have misused federal financial instruments and withheld filings such as 1099-OID, 1040-V, 1096, 1040 and 8281 on Plaintiff's behalf in connection with court-linked revenue, all while obstructing lawful IRS administrative settlement procedures.

9. The named officials, in conspiracy and through racketeering conduct, have used Plaintiff and her child's identity, credits, and status to generate federal funds and reimbursement while engaging in fraud upon the court.

10. These actions have caused irreparable harm, emotional distress, unlawful detainment, defamation, parental alienation, financial exploitation, and the illegal seizure of Plaintiff's children. Furthermore, Defendants knowingly assisted Plaintiff's abuser in gaining custody of her son after unlawfully removing both children from her care, perpetuating abuse and obstructing justice. Since 2018, Plaintiff's abuser has weaponized Child Protective Services (CPS) by initiating over 13 fabricated cases, all of which were used to harass, intimidate, and entrap Plaintiff. DSS further enabled this prolonged abuse by conspiring with him to violate Plaintiff's rights through false reporting and judicial manipulation.

11. This pattern evidences a premeditated and coordinated scheme by DSS to manipulate outcomes over the course of years using procedural distortions and state operations. Family Court Judges denied Plaintiff's protective order requests. The Duncan Police Department failed to respond to enforcement of a no-trespass order and reduced Plaintiff's abuser's charges, facilitating further abuse.

12. Furthermore, DSS unlawfully seized and misappropriated Plaintiff's daughter's Social Security benefits, failing to allocate the funds for her care or documented needs. These actions were taken without court order or fiduciary accountability, constituting theft of federal funds, financial exploitation of a minor, and violation of trust and fiduciary standards under Social Security law and child welfare regulations.

13. Despite Plaintiff's daughter remaining in the care of her maternal family, DSS removed Plaintiff's mother as the authorized payee in violation of GN 00502.159 (SSA Policy – Additional Considerations). DSS engaged in this interference without lawful hearing or adjudication.

14. These actions amount to unlawful adjudication of private rights by state actors and non-Article III courts. Per *Stern v. Marshall,* 564 U.S. 462 (2011), such courts lack authority to determine core private rights issues. DSS and associated state courts exceeded their jurisdiction and authority under the Constitution and federal law.

15. DSS's improper use of Medicaid referrals, resulting in financial gain through Medicaid reimbursements, aligns with conduct prohibited by the Anti-Kickback Statute. The Anti-Kickback Statute forbids entities from knowingly and willfully offering, paying, soliciting,

or receiving remuneration to induce or reward referrals for Medicaid services without medical necessity.

16. Plaintiff further asserts that she has filed numerous complaints in federal courts to seek redress for ongoing violations by public officials and Wilkey but has been systematically denied access and sanction to pay court fees after filing "Application to Proceed in District Court Without Prepaying Fees or Costs". When I filed the Motions for removal of related state cases to federal court were denied under the justification that only federal officials could initiate removal. However, 28 U.S.C. § 1441(a) authorizes removal of civil actions from state to federal court by any defendant where the district courts have original jurisdiction. Additionally, 28 U.S.C. § 1443 provides that removal is proper where the plaintiff is denied or cannot enforce rights secured under federal civil rights laws. Despite raising substantial federal questions, the courts reclassified her filings under 42 U.S.C. § 1983 without consent and subsequently imposed sanctions or dismissed her actions for inability to pay the filing fee, thereby obstructing her right to due process and equal access to justice under federal law. *Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272 (1856)* – Article III courts must resolve private property issues.

**Malicious Retaliation and Judicial Complicity Enabling WILKEY**

When WILKEY's charge of kidnapping and domestic violence was unlawfully reduced to a lesser offense of assault and battery by Judge MARK HAYES II, WILKEY began issuing threats toward PETITIONER all over again and initiated a campaign of malicious false claims to intimidate, defame, and destabilize PETITIONER.

17. WILKEY has initiated **more than thirteen (13) knowingly false claims** of abuse, each unsupported by lawful evidence and executed in **bad faith**.

18. In response to THESE FALSEHOODS and threatening communication, PETITIONER has lawfully filed **five (5) VERIFIED PROTECTIVE ORDER PETITIONS** against WILKEY, each of which has been **denied or dismissed** by the assigned COURT(S), despite **overwhelming factual and documentary evidence** of harassment.

19. These filings, having been repeatedly dismissed and found without lawful basis, establish a malicious and unlawful pattern of conduct. This qualifies as retaliatory harassment

under federal law, specifically actionable under 42 U.S.C. § 1983 (deprivation of rights under color of law) and 18 U.S.C. § 241 (conspiracy against rights) **and under SC Code § 16-3-1700**. The conduct further supports common law causes of action including defamation, malicious prosecution, and abuse of process.

20. Unfounded false claims by WILKEY were conducted with calculated intent to deceive, intimidate, harass, and exercise coercive control over PETITIONER through abuse of the judicial process. WILKEY did not personally file any court petition, but knowingly provided materially false information to the Duncan Police Department with the intent to initiate judicial action under false pretenses. Based on WILKEY's false claims, law enforcement and court officials initiated a false arrest and issued an unlawful order barring PETITIONER from contact with her children—absent any lawful basis or evidentiary support. With DSS attorney Robert C. Rhoden III intentionally fabricating and presenting a scratch and saying it a cut and false bruises as evidence to support WILKEY's false narrative, Relying on this false information, law enforcement and court officers initiated a false arrest and a order to keep away from my children without unsupported by lawful cause. This conduct constitutes a federal civil rights violation under 42 U.S.C. § 1983 and actionable abuse under 18 U.S.C. § 241 (Conspiracy Against Rights), wherein WILKEY, in concert with state actors, sought to deprive PETITIONER of her liberty, parental rights, and legal protections through knowingly false and retaliatory judicial processes.

21. Further, these actions constitute **False Reporting of Child Abuse or Neglect**, a **misdemeanor offense** under South Carolina law, which is punishable by **fine, imprisonment**, and exposes the accuser to **civil liabilities**, including **actual and punitive damages**, as reflected in **S.C. Family Law Reports, Vol. 48**.

22. In addition to criminal statutes, WILKEY'S conduct is **actionable under the common law doctrines** of **Malicious Prosecution** and **Abuse of Process**, both of which entitle PETITIONER to **compensatory and punitive relief**.

23. Despite evidence on the record of this **repeated harassment and judicial abuse**, the **PRESIDING JUDGES** assigned to these matters have:

   o  **Failed to grant lawful relief,**

11

    o   **Refused to enjoin further abusive filings**, and

    o   **Ignored mandatory state protections** under **SC Code § 16-3-1700 et seq.**, thereby establishing a **pattern of judicial complicity** and **constructive neglect of duty**.

## KEY ISSUES WITH THE TRANSCRIPT

The Petitioner identifies significant irregularities in the official court transcript, which undermine the accuracy and integrity of the judicial record and violate the Petitioner's constitutional rights to due process and a fair trial.

24. **Altered or Misplaced Content:** Statements within the transcript do not accurately reflect the timeline of events. For instance, Drew Hammond, the Guardian ad Litem's (GAL) attorney, questioned the Petitioner about her address during the initial appearance on June 24, 2024, not during the merits hearing on July 18, 2024, as indicated in the transcript. This misrepresentation distorts the factual basis of the proceedings, depriving the Petitioner of a reliable judicial record.

25. **Fraud Upon the Court:** The manipulation of judicial records to fabricate events and align with a false narrative constitutes fraud upon the court. These alterations were made with the intent to disadvantage the Petitioner and obscure the truth, further violating her rights under the Fourteenth Amendment.

26. **Chain of Custody Concerns:** The transcript was not finalized by the original court reporter, Cheryl T. MacMillan, who recorded the proceedings. Instead, it was completed by Emily F. Walker, a secondary party who was not present during the hearings. This raises significant concerns regarding the chain of custody and the potential for intentional tampering or inaccuracies.

27. **Professional and Ethical Violations:** Court reporters are bound by ethical obligations to ensure transcripts accurately reflect court proceedings. The involvement of a secondary reporter who did not witness the hearings breaches these professional duties, further undermining the credibility of the transcript.

## SYSTEMIC DENIAL OF DUE PROCESS, JUDICIAL IMPARTIALITY, AND ADMINISTRATIVE ACCESS UNDER COLOR OF LAW

28. On appeal, the assigned JUDGE refused to provide Plaintiff with a fair trial. The court declined to compel the lower court to establish jurisdiction on the record and actively blocked Plaintiff from introducing material evidence into the appellate record. These judicial refusals violated Plaintiff 's constitutional rights to due process, equal protection, and access to redress under the First and Fourteenth Amendments.

29. Plaintiff lawfully filed a Writ of Certiorari in the South Carolina Supreme Court seeking constitutional review, and that Court declined to entertain the matter. The refusal to hear the petition, combined with the procedural and constitutional deficiencies detailed herein, leaves no adequate state remedy and warrants federal intervention.

PETITIONER asserts that the following government entities and officers have acted in coordinated administrative obstruction, denying PETITIONER access to her lawful records, filings, and remedy:

30. Plaintiff further alleges that the SOUTH CAROLINA SECRETARY OF STATE repeatedly and wrongfully denied HER Uniform Commercial Code (UCC) financing statement filings without lawful justification. These filings were essential to protecting HER legal and financial interests yet were obstructed under color of state authority in a pattern consistent with the broader campaign of suppression, denial of access to administrative processes, and obstruction of PLAINTIFF'S right to secure and perfect claims involving credit and asset control under UCC and federal creditor protections. This conduct violated the provisions of UCC §9-501, which specify the lawful jurisdictions and venues for perfection and enforcement of security interests, and UCC §9-516, which mandates that the filing office shall accept records for filing unless they do not meet explicit and narrowly defined criteria. The SECRETARY OF STATE acted outside these boundaries, thus constituting as administrative obstruction and an impairment of obligation under the color of law. The **South Carolina Secretary of State** refused to lawfully accept and file PETITIONER'S Uniform Commercial Code (UCC) Financing Statement, in violation of commercial and constitutional right to secure HER legal identity and estate.

31. The **Spartanburg County Health Department** refused to release PETITIONER'S original Certificate of Live Birth, violating rights to personal identity, property interest, and lawful status.

32. The **Clerk(s) of Court** refused to file documents lawfully submitted into case records, obstructing due process and equal access to justice.

33. Officials and custodians of public bonds and records **refused to honor lawful Freedom of Information Act (FOIA) requests** to disclose judicial surety bonds and official oaths, shielding public officials from lawful accountability. **5 U.S.C. § 552** — violations of the Freedom of Information Act; **42 U.S.C. § 1983** — for denial of procedural and property rights under color of law; **The Ninth and Tenth Amendments** — retained and reserved rights of the People; **Civil Rights Act of 1866**, Stat. 61 §1 — protection of legal personhood and access to contracts; And the **Universal Declaration of Human Rights**, Article 6 — right to recognition everywhere as a person before the law.

34. PETITIONER asserts that the South Carolina Law Enforcement Division (SLED) unlawfully denied HER the right to carry a weapon based on a requirement to obtain a favorable recommendation from the Spartanburg County Sheriff's Office. This condition constitutes a form of administrative coercion and an unlawful delegation of constitutional authority to a third-party agency with documented bias and conflict of interest. The denial of this fundamental right was not based on lawful adjudication but on retaliatory and discretionary denial outside lawful standards. **Second Amendment** — right to bear arms. **42 U.S.C. § 1983** — deprivation of federally protected rights under color of law; **14th Amendment Due Process Clause** — denial of a fundamental liberty interest without fair process; **Civil Rights Act of 1866**, Stat. 61 §1 — equal right to contract, carry arms, and protect one's person and property.

## CONCLUSIONS OF LAW

1. All JUDGES are bound by their OATH to uphold the **Constitution for the United States of America** and the **Rights of the Individual Sovereign**, including PETITIONER, as secured by the:

   o **First Amendment** (Right to Petition for Redress),

- ○ **Fifth Amendment** (Due Process),
- ○ **Ninth Amendment** (Reservation of Rights), and
- ○ **Tenth Amendment** (State Sovereignty and Reserved Powers).

2. Any JUDGE who refuses to apply **lawfully enacted statutes** in favor of a protected INDIVIDUAL while knowingly permitting malicious abuse of the court system has:
   - ○ **Violated their judicial oath**, and
   - ○ **Invoked the oversight jurisdiction** of the **South Carolina Commission on Judicial Conduct**.

3. Judicial refusal to enjoin further filings by WILKEY, in the face of clear and convincing evidence of **falsehood, malice, and fraud**, constitutes:
   - ○ **Constructive fraud** by omission, and
   - ○ A **State-Created Danger** actionable under federal constitutional law.

4. Repeated denial of injunctive relief and failure to protect PETITIONER establishes a **pattern of willful indifference**, satisfying the federal threshold for a **Civil Rights deprivation under color of law**, in violation of:
   - ○ The **Civil Rights Act of 1866**, and
   - ○ The **Preamble to the "I Am An American Day" Act of 1940**.

5. **Judicial recusal is mandated** where:
   - ○ **Personal bias or prejudice is evident**,
   - ○ The JUDGE has **failed to act despite repeated statutory violations**, or
   - ○ Where the COURT has exhibited a pattern of **selective enforcement or favoritism**. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

## UNLAWFUL SURVEILLANCE, NON-CONSENSUAL EXPERIMENTATION, AND PSYCHOPHYSICAL INJURY UNDER COLOR OF FEDERAL AUTHORITY

1. PLAINTIFF asserts that SHE has been subjected to continuous and unauthorized surveillance, tracking, and behavioral targeting through covert technologies and agencies operating under the color of law, including but not limited to the **Foreign Intelligence Surveillance Act (FISA)**. Said surveillance lacked a warrant, due process, or any showing of lawful cause, violating the **Fourth Amendment** to the Constitution for the United States of America.

2.  PLAINTIFF further asserts that SHE has endured long-term mental and physical trauma as a result of non-consensual experimentation consistent with known and declassified parameters of **MK ULTRA** and related covert operations. These experiences include manipulation of consciousness, dream interference, memory fragmentation, and psychosomatic symptoms, all without HER consent, advisement, or lawful contract. These acts constitute violations of:

    - **The Fifth Amendment** (bodily autonomy and liberty),

    - **The Civil Rights Act of 1866,**

    - **The Nuremberg Code,**

    - and are actionable under **Bivens v. Six Unknown Agents.**

3.  These abuses were carried out by federal agents, contractors, or proxies acting under the umbrella of national security but outside any constitutional authority, thus rendering them personally liable for damages and civil redress under UNIVERSAL LAW.

## ADA ACCOMMODATIONS

The Plaintiff requests reasonable accommodations under the Americans with Disabilities Act (ADA) due to intellectual disability and cognitive impairments stemming from two mild traumatic brain injuries. These impairments affect Plaintiff's speech, reading, and ability to structure complex legal arguments. Plaintiff also experienced significant educational disruptions in childhood by DSS, and States operation which compound these difficulties.

To ensure meaningful access to justice as required by federal law, including *Mathews v. Eldridge,* 424 U.S. 319 (1976), and *Olmstead v. L.C.,* 527 U.S. 581 (1999), Plaintiff requests that this Court recognize necessary deviations in formatting, organization, and presentation throughout this complaint as essential to fair and full participation in the judicial process.

## CLAIMS FOR RELIEF

PLAINTIFF further alleges that **Spartanburg Regional Hospital**, in concert with the **Spartanburg County Sheriff's Department**, engaged in acts of:

- **Kidnapping**: forcibly detaining PLAINTIFF without warrant, court order, or due process;
- **Forced Medication**: coercing PLAINTIFF into ingesting drugs against HER will;
- **Medical Battery**: administering substances and treatments without informed consent;
- **Public Strip and Humiliation**: compelling PLAINTIFF to undress in the presence of medical personnel and officers, violating bodily dignity and privacy.

These acts were executed under color of law, at the directive of public officers acting outside lawful authority, constituting grave violations of:

- The Fourth and Fifth Amendments,
- The Civil Rights Act of 1866,
- The Nuremberg Code,
- South Carolina kidnapping and false imprisonment statutes,
- and international human rights standards.

Such coordinated abuse demonstrates **willful collusion between private institutional actors and county officials** to suppress, control, and injure the living woman, PLAINTIFF, in a manner that shocks the conscience and violates every principle of lawful governance. PLAINTIFF hereby reserves all rights for full remedy and reparation under UNIVERSAL LAW.

### ADDITIONAL CONSTITUTIONAL BASIS FOR CLAIMS

In light of *Paul v. Davis* and *Wisconsin v. Constantineau*, plaintiffs asserting § 1983 claims may argue that reputational harm combined with state action can constitute a protected liberty interest. When state actors, such as child protective services or police agencies, falsely label individuals without affording them due process, the stigma can result in constitutional injury. For example, when the government stigmatizes a parent as unfit, seizes custody of their children, or withholds services based on that label without a formal adjudication or opportunity to be heard, this may rise to a due process violation.

Plaintiff asserts that DSS, acting under color of state law, publicly and procedurally stigmatized her by falsely labeling her as an unfit parent, interfering with her familial integrity, and depriving

her of legal protections and access to her children. As the Court stated in *Wisconsin v. Constantineau*, "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." DSS provided neither, violating procedural due process under the Fourteenth Amendment.

Conclusion: This complaint demonstrates how 42 U.S.C. § 1983 litigation reflects and reshapes constitutional doctrine. The pursuit of monetary damages under § 1983 highlights the structural tension between enforcing civil rights and preserving institutional accountability.

## CLAIMS FOR RELIEF

**Count I:** Deprivation of Rights under 42 U.S.C. § 1983

**Count II:** Misprision of Felony under 18 U.S.C. § 4

**Count III:** Conspiracy Against Rights under 18 U.S.C. § 241

**Count IV:** Civil RICO Violations under 18 U.S.C. § 1962

**Count V:** Fraud and Abuse of Public Office

**Count VI:** Declaratory and Injunctive Relief for Federal Subrogation and Tax Return Rights

**Count VII:** False Claims Act Violations under 31 U.S.C. § 3729 et seq.

**Count VIII:** Perjury and False Statements

**Count IX:** Violation of the Anti-Kickback Statute under 42 U.S.C. § 1320a-7b

**Count X:** Breach of Contract under Common Law and Equity

**Count XI:** Entrapment and Malicious Prosecution in Violation of Due Process Rights

**Count XII:** Breach of Fiduciary Duty and Breach of Public Trust

**Count XIII:** Unlawful Surveillance and Violation of Privacy Rights under Section 702 of the FISA Amendments Act

**Count XIV:** Collusion, Kidnapping, and Medical Battery Under Color of Law

**Count XV:** Abuse of Judicial Office and Systemic Misconduct, and

**Count XVI:** Administrative Denial of Access to Remedy and Records **in Violation of Constitutional and Natural Rights**

**Count XVII:** Unlawful Denial of Firearm Rights by SLED in Conjunction with County Obstruction — citing the Second Amendment, due process, and civil rights violations due to SLED's denial based on an arbitrary requirement from the Spartanburg Sheriff's Office.

## PRAYER FOR RELIEF

WHEREFORE, PETITIONER, LATASHA MONIQUE BOYD, appearing sui juris, respectfully petitions this Honorable Court for judgment in HER favor and demands the following lawful and equitable relief:

## DECLARATORY AND INJUNCTIVE RELIEF

1. That this Court assume jurisdiction over this matter and confirm venue as proper.
2. That this Court issue a Declaration that the acts, policies, and omissions of the Respondents violated PLAINTIFF'S constitutionally and federally protected rights.
3. That this Court issue injunctions restraining further abuse, surveillance, and exploitation of PETITIONER and HER children.

## RICO ENTERPRISE REMEDY

4. That this Court find the Respondents constitute an enterprise under 18 U.S.C. § 1961(4) and engaged in racketeering activities under 18 U.S.C. § 1962.
5. That this Court award treble damages, order forfeiture of unlawful gains, and dissolve the enterprise operations.

## COMPENSATORY AND PUNITIVE DAMAGES

6. General, special, and punitive damages for emotional distress, financial harm, and constitutional violations.
7. Attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988, EAJA, and 31 U.S.C. § 3730(d).

## UNLAWFUL SURVEILLANCE AND EXPERIMENTATION

8. Declaration that PETITIONER was subjected to unconstitutional surveillance and non-consensual experimentation.
9. Finding that such actions violate the Fourth and Fifth Amendments, the Nuremberg Code, and international law.

10. Permanent cessation of all covert targeting and data collection.

11. Protective Order against future surveillance and experimentation.

12. Compensatory damages for trauma, PTSD, and spiritual harm.

## SPECIFIC INJUNCTIVE RELIEF BY RIGHT

- Permit Restraining Order against Derrick Wilkey under S.C. Code § 16-3-1750.
- Civil sanctions preventing further malicious filings by Wilkey.
- Judicial misconduct complaint against involved judges.
- Immediate evidentiary hearing on all claims.

## IDENTITY AND COMMERCIAL STANDING

- Order for the release of PETITIONER'S original Certificate of Live Birth.
- Recognition of PETITIONER'S right to file a UCC Financing Statement as a Secured Party.

## CONDITIONAL FINALIZATION

1. PETITIONER enters this PETITION asserting all rights secured by the Constitution, Civil Rights Act of 1866, and Natural Law.

2. Jurisdiction must be proven by lawful authority.

3. PETITIONER reserves all legal exemptions, defenses, and protections under the First, Fourth, Fifth, Ninth, and Tenth Amendments.

4. All relief sought is conditioned upon compliance with the supreme law of the land.

5. Any unlawful acts by state agents are deemed void ab initio.

6. PETITIONER objects to foreign jurisdiction and unlawful presumptions.

7. All public officials are hereby placed on lawful notice of personal liability.

8. This finalization stands as a lawful reservation of rights.

## CERTIFICATION / VERIFICATION / VALIDATION

I, LATASHA MONIQUE BOYD, do hereby affirm that all statements made herein are true, correct, and complete to the best of MY firsthand knowledge, belief, and understanding. So help me God on this day April 1, 2025 as is hereby so attested!

**So help me God, on this day April 1, 2025, as is hereby so attested.**

*Latasha M. Boyd   UCC 1-308 without prejudice*

**Latasha Monique Boyd**
Sui Juris, In Propria Persona
c/o 115 Gap Creek Rd., Apt. 1G
Duncan, South Carolina [29334]
Email: tashasfamily2018@gmail.com
Phone: 864-205-3776

**Self-Notarized under the Laws of the United States of America**
**Executed this Day: April 25, 2025**